FILED
IN CLERK'S OFFICE
U. S. DISTRICT COURT E.D. N.Y.
★ AUG 25 2005 ★
TIME A.M. _____
P.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
Michael Haggerty,

                      Plaintiff,

-against-

Alberto Gonzales,[1] United States Department of Justice,

                      Defendant.
-----------------------------------------------------------X

02 CV 6187 (SLT) (LB)

MEMORANDUM & ORDER

On July 19, 2002, Plaintiff Michael Haggerty ("Plaintiff") filed this civil action against John Ashcroft, then Attorney General.[2] He claims that he was denied a promotion and subjected to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et. seq. For reasons discussed herein, Defendant's motion for summary judgment is granted.

## STATEMENT OF FACTS

*Plaintiff's Employment Experience with the INS*

Plaintiff is an American-born, white male of Irish descent. (Def. 56.1 ¶ 1.) From May 2, 1993 through July 31, 1999, he was employed by the Immigration and Naturalization Service ("INS" or "Defendant"). (Def. 56.1 ¶ 2.) At all times during his employment, Plaintiff held the position of Immigration Inspector. *Id.* His salary began at the general scale pay rate of GS-5,

---

[1] The original caption named John Ashcroft as defendant. Because Alberto Gonzales is the current United States Attorney General, he is now the appropriate Defendant in this action.

[2] Plaintiff was an employee of the Immigration and Naturalization Service ("INS"). He is therefore required to name the head of the agency as the defendant in a civil action. 42 U.S.C § 2000e-16 (c); *see also Gallo v. Herman*, 2000 U.S. App. LEXIS 2236, at *2 n.1 (2d Cir. 2000) ("Under 42 U.S.C. § 2000e-16(c), the head of the employing department is the only appropriate defendant in a Title VII action brought by federal employee.").

step 8, and, after receiving promotions consistent with his position as Immigration Inspector, his final pay increase brought him to GS-9, step 4. (*See* Def 56.1 ¶¶ 3-5.) As an Immigration Inspector, Plaintiff's responsibilities included "primary" duties which entailed inspecting applicants for admission to the United States while sitting in a booth at JFK airport; "secondary" duties which entailed completing in-depth inspection of applicants referred by a primary inspector after problems arose in their initial inspection; and "crew inspections," which entailed inspecting airline crew members. (Def. 56.1 ¶ 6.) Over time, Plaintiff spent more time performing "secondary" duties and less time performing "primary" duties. (*See* Def. 56.1 ¶ 7.)

*Lucy Batista's Employment Experience*

On June 10, 1984, Immigration Inspector Lucy Batista ("Batista") began working as an intermittent Immigration Inspector. (Def. 56.1 Stat. ¶ 8.) She is a female of Puerto Rican descent. (Def. 56.1 Stat. ¶ 9.) While an Immigration Inspector, she took computer training courses, and completed collateral duty in the training unit, which included training Immigration Inspectors in both immigration law and Spanish in the INS Post-Academy training program. (Def. 56.1 Stat. ¶¶ 11, 13.) Batista began at the pay rate of GS-5, step 1, and over her tenure she received promotions such that on the August 19, 1998 selection date, her pay rate was GS-11, step 5. (Def. 56.1 Stat. ¶ 10.)

*Immigration Inspector Position*

On June 22, 1998, INS issued a vacancy announcement seeking applicants for the position of Immigration Inspector (Instruction) (hereinafter "Immigration Instructor") at JFK airport with a grade in service of GS-11. (Def. 56.1 ¶ 14.) This position required training Immigration Inspector trainees and other immigration officers to perform inspections at the

2

airport. (Def. 56.1 ¶ 15.) The announcement listed the "knowledge of the law, regulations, and procedures concerning entry of persons to the United States and eligibility for various benefits under the immigration laws" and that the applicant's job experience "involve[] inspection work of a comprehensive nature" as selective placement factors. (Def. 56.1 ¶ 16.) After submitting his application, Plaintiff was placed on the "promotion certificate" as one of the eight individuals to be considered for the position. (Def. 56.1 ¶ 17.)

Shortly after the vacancy was posted, John Miradona, Assistant District Director for Inspections/Area Port Director, ("Miradona")[3] sent an e-mail to the selection committee and the Training Supervisor for this position asking that each member recommend one name from those listed alphabetically on the promotion certificate. (Def. 56.1 ¶¶ 19, 21.) The selection committee consisted of twelve individuals, who were both male and female and represented various ethnicities, including at least one American-born male of Irish descent, James Hayes. (56.1 Stat. ¶¶ 21, 25.)[4] On the day Miradona sent this e-mail, twelve out of thirteen members of the committee responded. (Def. 56.1 Stat. ¶ 22.) The member who did not respond was on a detail in Bermuda. (Def. 56.1 ¶ 23.) Every one of the twelve who responded recommended that Immigration Inspector Batista be promoted. (Def. 56.1 ¶ 24.) Certain members of the selection

---

[3] Miradona was in charge of personnel decisions at JFK airport. (Def. 56.1 ¶ 18.)

[4] Specifically, the selection committee consisted of Charles Akalski, Assistant Port Director, male of Polish-Russian descent; Philip Austin, Assistant Port Director, male of American descent; Michael Blair, male of Guyanese descent; Joseph Cardinale, Assistant Post Director, male of Italian and American descent; Holliston Edwards, Assistant Port Director, male of Trinidadian descent; James T. Hayes, Assistant Port Director, male of Irish and American descent; Gary Levenson, male of American descent; Richard A. Pileggi, Deputy Port Director, male of southern European descent; Betty Scully, Assistant Port Director, female of American descent; George Wetteland, Deputy Port Director, male of American descent. (*See* Horan Dec., Ex. 5 at 2.) Plaintiff disputes whether Gary Levenson was member of the selection committee. (Plaintiff's Pro Se Response to Defendant's Memorandum of Law Supporting Motion to Dismiss ("Pl. Opp") at 2-3.)

committee stated that they chose Batista because she had experience assisting and handling the logistics of training classes and that she had demonstrated "exceptional interest in the training program." (Def. 56.1 Stat. ¶ 25-27.) On August 19, 1998, Miradona selected Batista to fill the position. (Def. 56.1 Stat. ¶ 28.)

*Incident with Mirna Olmos*

On May 19, 1999, Plaintiff and Immigration Inspector Mirna Olmos ("Olmos") reported to work at the Delta Airline terminal at JFK airport. (Def. Stat. 56.1 ¶ 30.) A verbal altercation occurred between them. (Def. Stat. 56.1 ¶ 31.) As described in the INS Report of Investigation, this altercation began because Plaintiff refused to speak to Olmos in support for another co-worker, Karen Hageman ("Hageman"). (*See* Dec. of Kelly Horan, dated January 26, 2004 ("Horan Dec."), Ex. 19 at 339.) Shortly, before this altercation, Olmos and Hageman were involved in an incident after which Olmos charged Hageman with racism. (*Id.* at 341-42.) Plaintiff alleges that Olmos claimed that he called her a "nigger" during the altercation. (*Id.* at 339; Def. 56.1 Stat. ¶ 32.) Plaintiff also claims that this incident could have impacted him negatively with respect to his application to the Bureau of Alcohol, Tobacco, and Firearms (Def. 56.1 Stat. ¶ 33; Pl. Opp. at 3), and that it could have resulted in an investigation of him or in adverse action being taken against him. (Def. 56.1 Stat. ¶¶ 34.) He has not alleged and his personnel file does not reflect that any such action occurred. (Def. 56.1 Stat. ¶¶ 35, 36.)

## PROCEDURAL HISTORY

On August 27, 1998, eight days after Batista's selection, Plaintiff sought EEOC counseling for his claim that he was discriminated against when he was not selected for the Immigration Inspector (Instruction) position. (Def. 56.1 ¶¶ 37.) Almost a year later, on July 1,

4

1999, he sought EEOC counseling alleging that he was subjected to a hostile work environment with respect to the May 19, 1999 incident between he and Olmos. (Def. 56.1 ¶¶ 39.) He filed formal complaints with respect to these allegations on November 24, 1998, and July 27, 1999, respectively. (Def. 56.1 ¶¶ 38, 39.) These complaints were not resolved informally. (Def. 56.1 ¶ 40.) After an Administrative Law Judge denied Plaintiff's request for a hearing and combined both complaints for a decision, he issued a written decision in favor of the INS on both complaints, dated May 29, 2002. (*See* Def. 56.1 ¶ 40, 41; Horan Dec., Ex. 22.)

On July 19, 2002, Plaintiff filed a complaint in the United States District Court, Eastern District of Pennsylvania. On October 8, 2002, that court granted the INS's motion to transfer venue to the Eastern District of New York. Six weeks later, Plaintiff's complaint was filed with this court. On March 26, 2004, Defendant's fully briefed motion for summary was filed. On February 4, 2005, the parties appeared for oral argument.

## DISCUSSION

*Summary Judgment Standard*

Rule 56 (c) of the Federal Rules of Civil Procedure states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). In the process of ruling on a motion for summary judgement, the court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Childers v. United States Postal Service*, 2003 U.S. Dist. LEXIS 9993, at *5 (W.D.N.Y. Apr. 15, 2003). "The burden is upon the moving party to demonstrate that no

5

genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994). Specifically, "a 'genuine' issue is one that could be decided in favor of the non-moving party based on the evidence by a reasonable jury." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). Yet, "conclusory allegations (by the non-moving party) will not suffice to create a genuine issue." *Id.*

*Pro Se Litigant Standard*

As a preliminary matter, it is important to note that in this case, Haggerty represents himself. Since Plaintiff appears *pro se*, the Court must construe his pleadings liberally and determine whether any valid ground for relief is stated. *See Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993). In addition, the Court "may look to submissions beyond the complaint to determine what claims are presented by an uncounseled party." *Boguslavsky v. Kaplan*, 159 F.3d 715, 719 (2d Cir. 1998).

*Rule 56.1*

In its Reply, Defendant argues that Plaintiff's claims should be rejected due to his failure to file a statement of uncontested material facts pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York ("56.1 Statement") controverting the statement it filed. (*See* Letter from Kelly Horan, dated Mar. 26, 2004, Dkt. No. 35.) This Court requires parties moving for summary judgment to annex "to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1. Subsection (c) of this rule states that each paragraph in the moving party's statement "will be deemed to be admitted for purposes of the motion unless specifically controverted [by the nonmoving party."

6

*Id.* However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," and while it "is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks omitted).

Moreover, "'the local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.'" *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (quoting *Holtz*, 258 F.3d at 74). In fact, "[a]n unopposed summary judgment motion may also fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (internal quotation marks omitted). Accordingly, the Court will not dismiss Plaintiff's case for failure to file a 56.1 Statement.

*Analysis of Claims*

I.  Disparate Treatment Claim

Title VII of the Civil Rights Act of 1964 states:

> (a) It shall be an unlawful employment practice for an employer --
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for

7

> employment in any way which would deprive or tend to deprive any
> individual of employment opportunities or otherwise adversely affect
> his status as an employee, because of such individual's race, color,
> religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

The court applies the three-part test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) to Title VII employment discrimination claims. First, plaintiff must demonstrate a prima facie case of discrimination by proving "(1) that he belongs to a protected class, (2) that he was qualified for the position, (3) that he was denied the position, and (4) that the denial occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class." *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 311-312 (2d Cir. 1997) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 n.6 (1981)); *see also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000); *De La Cruz v. New York City Human Resources Admin. Dep't of Social Servs.*, 82 F.3d 16, 20 (2d Cir. 1996). In order to meet his burden under the fourth prong, plaintiff must demonstrate that "the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). "An evidentiary proffer that satisfies [this four-prong] test gives rise to an inference of discrimination." *De La Cruz*, 82 F.3d at 20.

Second, "if the plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision." *Stratton v. Department for the Aging*, 132 F.3d 869, 879 (2d Cir. 1997). If the defendant meets his burden, "the presumption of

discrimination is rebutted and it 'simply drops out of the picture.'" *Id.* (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11 (1993)).

In the third and final step, the burden shifts back to the plaintiff to prove that the employer's explanation for the employment decision is merely pretextual. *See Tex. Dep't of Cmty. Affairs*, 450 U.S. at 253. Demonstrating that the employer's proffered reason is unpersuasive, contrived, or false does not, in and of itself, prove that the reason was a pretext for discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-47 (2000). In addition, "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Id.* at 147 (citing *St. Mary's Honor Center*, 509 U.S. at 517). Thus, the plaintiff's burden at this stage is to prove that "the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." *James v. New York Racing Assoc.*, 233 F.3d 149, 156 (2d Cir. 2000); *see also Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (holding that a court should examine the entire record to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff") (quoting *Reeves*, 530 U.S. at 143). To determine the sufficiency of the plaintiff's evidence, the court should consider "'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports or undermines the employer's case.'" *James*, 233 F.3d at 156 (quoting *Reeves*, 530 U.S. at 148-49).

*Prima Facie Case*

With regard to Plaintiff's minimal burden to establish a presumption of employment

9

discrimination, the parties only dispute the fourth step of the prima facie case. Accordingly, they agree that Plaintiff is a member of a protected class, that he was qualified for the position, and that he suffered an adverse employment action when he was not selected for the Immigration Instructor position. However, Defendant argues that since the selection committee was diverse, *e.g.* it included members of both genders and those of many different national origins, no inference of discrimination can arise. (Def. Mot. for Summ. J. at 13.) Plaintiff does not respond to this argument. Yet, since "a Title VII plaintiff need not show that every one–or even a majority–of a group of decisionmakers was biased in order to prove that a decision was infected by discrimination," *Jalal v. Columbia Univ.*, 4 F. Supp. 2d 224, 238 (S.D.N.Y. 1998), it is unreasonable to assume that a rational jury would conclude that simply based on the composition of the selection committee an inference of discrimination does not exist. Consequently, Defendant's argument fails.

Plaintiff claims that the job announcement was closed and then re-opened to allow Batista to apply, thereby creating an inference of discrimination. (Pl. Opp. at 2.) However, a careful review of the record does not support this contention. Defendant submitted both Plaintiff's and Batista's official personnel files with its motion. Plaintiff's application for the Immigration Inspector (Instruction) position included in his file is dated June 3, 1998. (Horan Dec., Ex. 3 at 786.) Batista's application was not included in her personnel file. However, Plaintiff submitted e-mails documenting an exchange between Gary Levenson, Supervisory Immigration Inspector, ("Levenson") and Gary Martin ("Martin"), that reveal that the closing date was rescheduled to July 24, 1998, because as of July 9, 1998–one day prior to when the position was to close–the official vacancy announcement had not been sent to JFK airport. (*See* Pl. Opp., Attach. A, Ex.

10

8.) On their face, these documents demonstrate that the closing date was delayed in an effort to ensure all employees at JFK airport had an opportunity to apply for the position. In addition, the promotion certificate on which all of the candidates, including both Plaintiff and Batista, were listed was created in Burlington, Vermont, was printed on August 7, 1998, and forwarded to Miradona shortly thereafter with both Plaintiff and Batista's names. (*See* Horan Dec., Ex. 10, 11.) It also listed July 24, 1998 as the closing date. (*See* Horan Dec., Ex. 10.) This shows that Batista's application was filed before the extended closing date. Plaintiff has not provided any evidence to suggest that the reasons stated in the e-mail exchanges between Levenson and Martin are false or to dispute what is clearly shown on the promotion certificate. His argument therefore fails.

Nevertheless, Plaintiff's minimal burden at the prima facie stage is to establish that he was treated differently from a similarly situated employee. *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001) (where plaintiff and the other employee "held positions of roughly equivalent rank," and were treated differently at the same time by the same people, plaintiff met her burden at the prima face stage). For the purposes of this motion, the Court assumes Plaintiff has made his prima facie case.

*Legitimate, Non-discriminatory Reason for the Nonselection*

Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's nonselection. It states that Batista was selected because she had more experience as an Immigration Inspector and in the training unit. As a result, Defendant has met its burden. *See Fisher v. Vassar College*, 114 F.3d 1332, 1336 (2d Cir. 1997) ("Any legitimate, non-discriminatory reason will rebut the presumption triggered by the prima facie case...'[T]he

11

defendant need not persuade the court that it was actually motivated by the proffered reasons' in order to nullify the presumption and obligate the plaintiff to satisfy the burden of proof.'") (quoting *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 254).

*Pretext*

The burden is now on Plaintiff to demonstrate that the INS's reason is pretextual. That is, he must show that the discrepancy between his experience and Batista's allows

> a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination. In effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.

*Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (internal quotation marks and citation omitted); *see also Holt v. KMI-Continental*, 95 F.3d 123, 130 (2d Cir. 1996) (upholding the district court's grant of summary judgment where the plaintiff attempted to show pretext based on her belief that she was the most qualified person, but failed to show that "others with equal or less experience were promoted, or that the defendant had a policy of promoting based on anything other than experience").

Plaintiff claims that the INS's reason for selecting Batista is pretextual in three ways. First, he claims that his education and the fact that he won more awards during his tenure at the INS made him a stronger candidate than Batista. Second, he alleges that Defendant impermissibly used time in grade to justify Batista's promotion. Finally, he claims that Batista's experience in the training unit was an advantage in the selection process to which he was not

12

given access. With respect to his first claim, neither a bachelor's degree nor a greater number of awards are listed on the vacancy announcement as requirements for the Immigration Instructor position. (*See* Horan Dec, Ex. 9.) But one of the selective placement factors listed in the announcement was knowledge of immigration law. Through Batista's experience in the training unit where she taught classes in immigration law, she acquired the selective requirements of the position–requirements Plaintiff did not have. There is nothing in the record to support Plaintiff's contention that Defendant's failure to select him in light of his education and accolades was pretextual.

Regarding his second claim, Plaintiff submits an e-mail from a member of the selection committee, Betty Scully, in which she wrote that time in grade, in and of itself, is not the only qualification for a promotion to support his claim that time was impermissibly used against him in the selection of Batista. (*See* Pl. Attach, Ex. 7.) However, Scully also discussed reasons Plaintiff may not have been selected, writing that Plaintiff turned down an opportunity to be placed in a higher grade one year after he began with the INS, and asked the recipient to remind Plaintiff that "a positive attitude towards peers as well as supervisors and the public is key."[5] *Id.* This could show that Batista's seniority should not have been determinative of her selection, that had Plaintiff taken the promotion he would have been better qualified for the position, or that Plaintiff was not selected based on intangible qualities. Nothing in the record clarifies the true import of Ms. Scully's message. Regardless, since Defendant does not claim that time in and of itself was the reason for Batista's selection and points to her training experience, whether time in

---

[5] Other than these comments, nothing in the records speaks to whether Plaintiff's attitude or his denial of a promotion played a role in his nonselection.

13

grade was or was not a factor does not change the fact that Batista had more experience in the training unit or support an inference that time in grade was used against him because he is male, of Irish descent, or both.

Plaintiff's final claim, however, is a bit more complicated. This claim can be construed as a separate disparate treatment claim for failure to train under which, "plaintiff must show, in addition to his protected-class status and satisfactory job performance, that [the defendant] offered training to its other employees and that he was denied that training under circumstances that give rise to an inference of discrimination." *Ani v. IMI Sys.*, 2002 U.S. Dist. LEXIS 15196, at *19 (S.D.N.Y. Aug. 15, 2002) (citing *Lopez v. Metropolitan Life Ins. Co.*, 930 F.2d 157, 161 (2d Cir.), cert. denied, 502 U.S. 880, 116 L. Ed. 2d 185, 112 S. Ct. 228 (1991)); *see also Holtz v. Rockefeller & Co.*, 1999 U.S. Dist. LEXIS 17682, at *10-11 (S.D.N.Y. 1999), *aff'd in part and vacated in part*, 258 F.3d 62 (2d Cir. 2001) (citing *Cook v. CBS, Inc.*, 1997 U.S. Dist. LEXIS 6670, at *5 (S.D.N.Y. 1997)). Assuming *arguendo* that Plaintiff satisfactorily performed his duties, there is a dispute over the policy by which Batista obtained experience in the training unit. Plaintiff objects to Defendant's characterization of Batista's collateral duty as volunteering and states that "there are no volunteers for collateral duty." (Pl. Opp. at 3.) He also claims that he "requested appointment to a collateral position," and was never selected by the Port Director. *Id.* In each of their affidavits, Batista, Miradona, and Levenson describe Batista's experience in the training unit as voluntary. (Horan Dec., Ex. 4, 7, 8.)

Nevertheless, even if collateral duties were not voluntary, since Plaintiff has provided nothing more than his conclusory allegations as to how this these duties were assigned and that he was denied these opportunities, he has not created a genuine issue of fact as to whether he was

14

denied training opportunities that Batista was granted on account of his national origin or gender. *See Ani v. IMI Sys.*, 2002 U.S. Dist. LEXIS 15196, at *19 (holding that where a Title VII plaintiff provided no competent evidence demonstrating that his employer provided training to white employees and not him on the basis of his race or national origin, he failed to establish a prima facie case of discriminatory failure to train). Accordingly, since Batista had nine more years of experience (including five in the training unit) and was two steps above Plaintiff on the pay scale, he has failed to raise a genuine issue of material fact as to whether the reasons articulated by Defendant for his nonselection were pretextual. In this case, it is clear that between experience and education, the INS elected job requirements that valued the first over the second, and that "there is nothing to show that this value judgment was pretextual." *Scaria v. Rubin*, 117 F.3d 652, 654-655 (2d Cir. 1997) (upholding the district court's grant of summary judgment to the Internal Revenue Service where the plaintiff had more education, but the person promoted had been "exposed to many of the areas of expertise required for the new position"). Consequently, Defendant's motion for summary judgment on Plaintiff's disparate treatment claim is granted.

II. Hostile Work Environment Claim

"To survive a motion for summary judgment, a plaintiff claiming he...was the victim of an unlawful hostile work environment must elicit evidence from which a reasonable trier of fact could conclude '(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Mack v. Otis Elevator Co.*, 326 F.3d 116 (2d Cir. 2003) (quoting *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir.1999)); *see also Harris v. Forklift*

*Systems*, 510 U.S. 17 (1993). However, "[s]imple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 223 (2d Cir. 2004); *see also Rizzo-Puccio v. College Auxillary Services, et. al.*, 2000 U.S. App. LEXIS 14116, at *8 (2d Cir. Jun. 14, 2000) ("As a general matter...isolated remarks or occasional episodes of harassment do not constitute a hostile work environment within the meaning of Title VII"); *Schwapp v. Town of Avon*, 118 F.3d 106, 100 (2d Cir. 1997) (the "mere utterance of an ... epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII") (internal quotation marks omitted). In fact, "[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be a "steady barrage of opprobrious racial comments." *Schwapp*, 118 F.3d at 110. In sum, when Plaintiff alleges that a single incident created a hostile work environment, he must demonstrate that the incident was "extraordinarily severe," enough "to have altered the conditions of [his] working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002); *see also Cruz*, 202 F.3d 560.

With respect to imputing harassment to the employer, the Second Circuit stated that "[w]here an employee is the victim of sexual harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial actions." *Petrosino*, 385 F.3d at 225; *see also Richardson*, 180 F.3d 426. Although the Second Circuit was referring to sexual harassment in this case, "[h]ostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment." *AMTRAK v. Morgan*,

536 U.S. 101, 116 n.10 (2002).

Plaintiff's hostile work environment claim is based on the incident between he and Olmos, in which he claimed that she alleged that his support for another coworker was racially motivated and that he had called her a "nigger." Notably, he does not claim that Olmos directed a racial slur toward him. Rather, his claim is predicated on the potential consequences of Olmos' allegation–consequences that never came to fruition. In any event, since the conduct he experienced occurred once, it can hardly qualify as severe or pervasive. *See, e.g., Rizzo-Puccio*, 2000 U.S. App. LEXIS 14116, at *8-9 (affirming the grant of summary judgement to defendant where plaintiff alleged that hostile work environment stemmed from one incident); *Turner v. National R.R. Passenger Corp.*, 181 F. Supp.2d 122, 131(N.D.N.Y. 2002) (rejecting hostile work environment claim where plaintiff alleged only two incidents of discriminatory conduct, including the use of the word "nigger"). Thus, the facts fail to support Plaintiff's claim of hostile work environment.

Even if Plaintiff demonstrated that he was subjected to a hostile work environment, Defendant suggests that these actions cannot be imputed to the INS since Olmos was not Plaintiff's supervisor. Plaintiff's claim that Olmos was involved in another incident with Hageman in which she made " a charge of racism" (Pl. Opp. at 4), could constitute notice, as required under *Petrosino*, 385 F.3d at 225. However, the record reveals that Hageman, and not Olmos was counseled for this incident. (Horan Dec., Ex. 17 at 342.) Moreover, Olmos was suspended for another incident in which she was involved.[6] (Horan Dec., Ex. 20 at 417.) Thus, evidence shows that once INS officials knew of harassment by Olmos, they took remedial action.

---

[6] It is unclear from the record if this incident involved allegations of racism.

Plaintiff, therefore, fails to make the required showing, and summary judgement on his hostile work environment claim is granted to Defendant.

## CONCLUSION

With respect to Plaintiff's disparate treatment claim, Defendant's motion for summary judgment is granted as Defendant's legitimate non-discriminatory reason for his nonselection, has not been shown to be pretextual. As to Plaintiff's hostile work environment claim, summary judgment is granted to the Defendant, since the incident Plaintiff complains does not rise to the level required under Title VII. The complaint is hereby dismissed.

**SO ORDERED.**

SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

Dated: August 23, 2005
Brooklyn, NY